## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| LAWRENCE E. STEWART, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 12-1506-CV-W-BP-P |
| LARRY DENNEY, | ) ) ) |
| Respondent. | ) ) |

### OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 conviction and sentence for distributing a controlled substance within 1000 feet of public housing, which was entered in the Circuit Court of Saline County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit 6), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit 11). Petitioner raises six (6) grounds for relief. Respondent contends that Grounds 1, 4, 5, and 6 are procedurally defaulted and that Grounds 2 and 3 are without merit.

### FACTUAL BACKGROUND

In affirming petitioner's convictions and sentences, the Missouri Court of Appeals, Western District, set forth the following facts:

> In the summer of 2007, Cheryl Wright contacted Saline County Deputy Christopher Chamberlin, who worked with the North Central Missouri drug task force, with an offer to provide assistance in exchange for favorable resolution of her own pending criminal charges. Chamberlin had Wright contact Stewart. Wright arranged to purchase crack cocaine from Stewart on September 3.

Wright met Stewart where he said he was staying, a duplex at 1317 South Grant Street near College Circle in Marshall, and drove him to Vest Circle. On the way, Wright gave Stewart the $50 she had previously received from police. When they arrived at Vest Circle, Stewart told Wright to stay in the car while he exited. A car drove up and stopped briefly. After the car left, Stewart returned and handed Wright a baggie containing crack cocaine. Wright dropped Stewart off at the South Grant Street address. She later gave law enforcement officers the baggie of crack cocaine she had purchased from Stewart.

On September 9, Wright made a second controlled drug buy from Stewart. Around 10:30 p.m., Wright was driven by her mother to the South Grant Street address. She exited the car and knocked on Stewart's door. Stewart answered the door and invited Wright in. Wright saw several children in the apartment, but did not see any adults. Stewart was on the telephone, trying, unsuccessfully, to contact a third person to obtain some cocaine. Wright asked if he had any cocaine to sell. Stewart then pulled some crack cocaine out of his pocket and handed it to Wright. Wright gave him the money and left.

While Chamberlin watched the building, Deputy Dusty Brandt obtained a search warrant. Chamberlin could see the front door of the residence but not the back door. He saw Stewart go in and out several times. Around 1:00 a.m., the deputies approached the apartment to execute the warrant. Before revealing themselves, a vehicle pulled up to the apartment. Virginia Heard, the occupant of the vehicle, had come to buy crack cocaine from Stewart. Stewart met Heard at her car, made a phone call, and someone came by to give Heard the drugs. At that point, the deputies announced their presence and took Stewart into custody

When the police executed the search warrant, they found a mattress on the floor of the northwest bedroom, some male clothing, a denim jacket and a duffle bag nearby. Inside the duffle bag, the police found a wallet containing Stewart's identification card and a number of prescription pill bottles with his name on them. The pockets of the denim jacket contained a pair of tweezers encrusted with cocaine residue and a marijuana smoking pipe with burnt marijuana residue inside.

Stewart was arrested and interrogated. He told Chamberlin that he did not know anything about illegal drugs. He also denied that he lived at the South Grant Street address, although he was unable or unwilling to provide officers with the address at which he resided.

Stewart was charged with distribution of a controlled substance near public housing pursuant to § 195.218, RSMo. The charge involved solely the September 9, 2007 sale of crack cocaine to Cheryl Wright. He was tried to a jury on August 13, 2008. At trial the Executive Director of the Marshall Housing Authority testified that the apartment at 1317 South Grant Street is part of a government-assisted housing project funded by the United State Department of Housing and Urban Development ("HUD"). The jury found Stewart guilty of distributing crack cocaine within 1,000 feet of public housing. He was sentenced as a prior and persistent offender to a twenty-five year term of imprisonment . . . .

Respondent's Exhibit 6, pp. 2-3.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### **GROUND 1**

In Ground 1, petitioner claims the trial court erred when it overruled defense counsel's objections and admitted evidence that petitioner sold crack cocaine on September 3, 2007. Doc. No. 1, p. 5. Respondent contends that plaintiff procedurally defaulted Ground 1 by failing to object at trial and that, alternatively, Ground 1 is without merit. Doc. No. 9, pp. 7-11.

Because no objection had been raised at trial, the Missouri Court of Appeals, Western District, reviewed Ground 1 for plain error and denied the claim as follows:

> In his First Point Relied On, Stewart alleges that the trial court erred in admitting evidence regarding the September 3, 2007 cocaine sale to Cheryl Wright, and two cocaine sales to Virginia Heard on September 9, 2007. Stewart contends that the evidence was neither logically nor legally relevant and its admission violated his due process rights and his right to be tried only for the crime with which he was charged. He argues that the evidence of uncharged crimes was relevant only to show that he had a propensity to sell drugs, and lacked any other, legitimate probative value.
>
> . . . .

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

Since Stewart's evidentiary challenge was not preserved, this issue may be reviewed solely for plain error . . . .

> The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. There are exceptions to the rule. Evidence of prior misconduct of the defendant although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect.

State v. Bernard, 849 S.W.2d 10, 13 (Mo. Banc 1993) (citations omitted). Notably, Bernard emphasized that "[t]he balancing of the effect and value of evidence rests within the sound discretion of the trial court." Id.

Missouri courts have recognized that evidence of uncharged misconduct is logically relevant when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the perpetrator of the charged offense. State v. Jackson, 228 S.W.3d 603, 606 (Mo. App. W.D. 2007); Bernard, 849 S.W.2d at 13. In addition, "evidence of uncharged misconduct may be admitted to demonstrate defendant's knowledge of particular facts, giving inference of defendant's awareness of his or her commission of the crimes charged." State v. Clover, 924 S.W.2d 853, 855 (Mo. banc 1996).

Stewart claims the evidence of the uncharged drug sales was inadmissible because it showed his propensity to sell drugs, and lacked any other legitimate probative value. He relies on four cases where evidence of prior drug transactions and other uncharged misconduct was held inadmissible, and convictions reversed. . . . Unlike the present case, however, it appears that in each of the cases Stewart cites, an objection was made at trial to the admission of the other drug transactions. Moreover, at least two of those cases recognize that evidence of prior drug transactions may be admissible, depending on the other evidence presented, and the line of defense a defendant pursues. . . . .

. . . .

In this case, the record shows that Steward placed his knowledge of the presence and nature of the cocaine at issue when he told the police that he had "no knowledge of the presence of any illegal drugs." The evidence of the prior drug sales tended to disprove Stewart's statement, since it showed that he had in fact sold drugs to Wright and Heard on four occasions in the past week, including two other occasions on September 9, 2007, itself. The evidence of Stewart's uncharged drug sales was also logically relevant because it exposed that he had lied to the police in claiming ignorance of any illegal drug activity. An attempt to deceive the police by making a false exculpatory statement shows a defendant's consciousness of guilt. State v. Farris, 125 S.W.2d 383, 388 (Mo. App. W.D. 2004).

4

The evidence of the other drug sales was also relevant to respond to Stewart's overarching trial theme: that drug dealers typically carry large amounts of cash, and his emphasis of the fact that the police did not find large quantities of cash, drugs, or drug paraphernalia at the 1317 South Grant apartment on executing the search warrant, and that Wright did not observe such items in the apartment during the charged transaction . . . .

In this case, the record shows that Stewart arranged the September 3, 2007 sale of cocaine from his apartment even though he took Wright elsewhere to pick up the drugs. On September 9, 2007, Stewart arranged for Heard to purchase cocaine by calling a third-party who delivered the drugs. As this evidence showed, Stewart personally engaged in the drug business, and designed his operation so that he would not have to keep a quantity of drugs or money on his person or concealed at his residence. It was not unreasonable for the jury to infer that Stewart still arranged for the sale of cocaine from his apartment even though no drugs or larger quantities of money were found at the apartment during the police search.

In these circumstances, we believe that it was not plainly erroneous to admit the challenged evidence as part of a "common scheme or plan." "For the prior crimes to be admissible under a common scheme or plan, it must show that the prior crimes had 'some relation to the general criminal enterprise,'" a condition that would appear to be satisfied here. Bernard, 849 S.W.2d at 14 (citation omitted); see also, e.g., State v. Frezzell, 251 S.W.3d 380, 384-85 (Mo. App. E.D. 2008).

. . . .

The evidence of the uncharged drug sales, each of which occurred, at least in part, at the 1317 South Grant Street apartment, also tended to show that Stewart was operating a drug business from the apartment, and was not just a casual guest or visitor. During the September 3, 2007 transaction, Stewart told Wright that he was staying at the apartment, and was both picked up and dropped off there. Heard testified that the 1317 South Grant Street duplex was Stewart's "establishment." Tr. 273. The jury could certainly infer from this evidence that Stewart was living at the 1317 South Grant Street address, operated a drug distribution business from the address, and exercised control over the property. As we discuss infra § II, this evidence is relevant to providing another essential element of the State's case: that Stewart knowingly sold cocaine within 1,000 feet of government-assisted housing.

For these reasons, we find that the uncharged crimes evidence was logically relevant to show Stewart's guilt of the charged offense.

The evidence of uncharged misconduct must also be legally relevant. Whether the prejudicial effect of uncharged crimes evidence outweighs its probative value, and is thus legally relevant, is a question left to the discretion of the trial court. State v. Andrich, 943 S.W.2d 841, 844 (Mo. App. E.D. 1997). Given the number of grounds on which the evidence was logically relevant, we cannot find plain error in the trial court's failure to exclude the evidence *sua sponte* on the grounds of legal relevance.

> In these circumstances, we cannot find that the trial court committed evident, obvious and clear error by failing to intervene at trial to exclude evidence of the uncharged September 3 and September 9, 2007 drug sales. Stewart's first Point Relied On is denied.

Respondent's Exhibit 6, pp. 4-10 (footnotes omitted).

Where the Missouri Court of Appeals considers a claim for plain error, a federal court also may review that claim for plain error. Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), cert. denied sub nom. Thomas v. Leubbers, 531 U.S. 967 (2000); Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996), cert. denied, 520 U.S. 1109 (1997). Under this standard, a federal court "will grant habeas relief only if 'manifest injustice resulted' from the alleged errors." Mack, 92 F.3d at 641. See also Frey v. Leapley, 931 F.2d 1253, 1255 (8th Cir. 1991) ("the error must amount to 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure'") (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Whether petitioner's Ground 1 is reviewed only for plain error under the line of cases represented by Mack, or is considered on its merits, it will be denied

State trial courts are afforded wide discretion with evidentiary rulings. "Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (citation and internal quotations omitted), cert. denied, 549 U.S. 835 (2006); see also Bell-Bey v. Roper, 499 F.3d 752, 759 (8th Cir. 2007), cert. denied, 128 S. Ct. 2426 (2008).

"The exclusion [or admission] of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007) (citation omitted), cert. denied sub nom. Skillicorn v. Roper, 552 U.S. 923 (2007). "To meet this burden, a habeas

6

petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (rehearing denied)).

Petitioner fails to meet this standard. The Missouri Court of Appeals found that the trial court did not err in admitting evidence of petitioner's uncharged misconduct because the evidence was relevant to disprove petitioner's statements that he had no knowledge of the presence of illegal drugs, to prove a common scheme or plan, and to show that petitioner was operating a drug business from the apartment and was not a casual guest or visitor. Respondent's Exhibit 6, pp. 4-10. Consequently, the record does not evince that the alleged errors were "so conspicuously bad that [they] fatally infected the trial and rendered it fundamentally unfair." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995) (citing Anderson, 44 F.3d at 679); see also Clark v. Groose, 16 F.3d 960, 963-64 (8th Cir. 1994) (holding that the Missouri Court of Appeals did not violate petitioner's due process rights when it ruled that evidence of petitioner's uncharged misconduct was relevant under the circumstances in order to respond to the defense's theory of the case). Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 1 will be denied.

## GROUND 2

In Ground 2, petitioner contends that the trial court erred in overruling petitioner's motion for judgment of acquittal because the evidence did not prove beyond a reasonable doubt that he knew that he was delivering crack cocaine within 1,000 feet of public housing or other government-assisted housing. Doc. No. 1, pp. 9-10. The Missouri Court of Appeals, Western District, denied Ground 2 as follows:

> In resolving such a sufficiency-of-the-evidence claim, "[t]he appellate court must not act as a 'super juror' exercising veto power, but, rather, must give great deference to the trier of fact." State v. Donahue, 280 S.W.3d 700, 701 (Mo. App. W.D. 2009) (en banc). Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the

7

defendant guilty beyond a reasonable doubt. State v. Crawford, 68 S.W.3d 406, 408 (Mo. banc 2002). In applying this standard, the court accepts as true all the evidence favorable to the State, including inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. Id. at 407-08.

In order to obtain a conviction for distribution of a controlled substance near public housing, the State must prove beyond a reasonable doubt that: (1) the defendant unlawfully distributed or delivered a controlled substance; (2) the distribution or delivery took place within 1,000 feet of the public housing property or other government-assisted housing; and (3) the defendant was aware of his proximity to public or government-assisted housing at the time of the offense. § 195.218; State v. Minner, 256 S.W.3d 92, 95 (Mo. banc 2008).

. . . .

Missouri courts acknowledge that proof of knowledge or intent is generally not susceptible to direct proof, absent a confession, and therefore a defendant's guilty knowledge is frequently proven by circumstantial evidence. See, e.g., State v. Woods, 284 S.W.3d 630, 639 (Mo. App. W.D. 2009).

In this case, there was sufficient evidence to show that Stewart was living at the apartment where he was selling the cocaine. When investigators searched the apartment, they found a room that appeared to be where Stewart was staying. In the room, they found a mattress, adult male clothes, a denim jacket and a duffel bag containing Stewart's I.D. and medications. The record would support a jury finding that Stewart had represented to both Wright and Heard that he was staying at, and/or operating from, the apartment. Merely because Stewart's name was not on the lease does not establish he was not living there. Indeed, there was evidence presented at trial that frequently drug dealers register property in the names of family members to conceal drug assets.

Stewart's actions also suggested that he was in control of the property. When Wright arrived at the residence around 10:30 p.m., Stewart invited her into the apartment. The fact that Stewart conducted multiple drug deals at or from the apartment, and was observed repeatedly entering and exiting the apartment and apparently turning the front porch light on and off in order to obscure any observation of who was entering and exiting the apartment or what was occurring on the front porch, also supports the inference that Stewart was in control of, or shared control of, the duplex.

The appearance of the property could also support the inference that Stewart was aware of its status as public housing. At trial, Stewart's counsel introduced into evidence several photographs of the property, Defendant's Exhibits A through E. Although defense counsel sought to rely on the fact that these photographs did not reveal any prominent signage identifying the property as public housing, the prosecution argued that the appearance of a complex of uniformly designed duplexes, in a neighborhood of detached homes of different colors, reflected that the housing was publicly assisted. In this regard, we also note that Chamberlin described the location where Wright was required to pick up Stewart for the September 3, 2007

transaction as "the east side of . . . the College Circle government housing project." Tr. 132. The Executive Director of the Marshall Housing Authority similarly agreed that "the group of housing that is in that area, that is the College housing unit." Tr. 211. This testimony suggests that the status of the development was well known.

It is also significant that the jury could reasonably have found that Stewart lied about his connection to the property. Even though Stewart claimed that he did not live at the apartment, he could not provide police with an alternate address for his place of residence. As discussed above the jury could rely on Stewart's false exculpatory statements as evidence of his consciousness of guilt; we believe it would be reasonable for the jury to extend this inference to conclude that Stewart consciously sought to avoid having his criminal acts associated with the heightened penalties applicable when such conduct occurs at or near public housing.

Stewart relies on State v. Minner, 256 S.W.3d 92 (Mo. banc 2008), to support his argument . . . . Unlike the present case, however, in Minner there was apparently nothing in the record to suggest that the defendant knew of the presence of a public housing complex 427.5 feet from the location where a cocaine sale occurred, or had any connection to the public housing complex. Id. The same could be said of our own subsequent decision in State v. Calvert, 290 S.W.3d 189 (Mo. App. W.D. 2009), where we vacated a conviction under §195.218, involving a drug sale which occurred at the defendant's home, more than 620 feet from the government-assisted housing. In finding the evidence to be insufficient as to the defendant's knowledge of the nearby public housing, we noted that "[t]here was no evidence that [the defendant] was familiar with the residents of the senior housing or that he had discussed the nature of their leases." Id. at 192. Here, the evidence would not merely support an inference that Stewart "was familiar with the residents of the [government-assisted housing]" – it suggests that he himself *was* such a resident. Further, he was related to the lessee, with whom the jury could have found he resided.

There is no dispute that the duplex at 1317 South Grant Street was in fact government-assisted housing. While we might tend to agree with the trial court that there "isn't the most clear-cut evidence that he knew that it was public housing," under our deferential standard of review we reject Stewart's sufficiency-of-the-evidence challenge. As a resident of the apartment, Stewart could reasonably be expected to know that the apartment was public housing. The jury could reasonably infer that Stewart was lying about living elsewhere. The jury also could have inferred that Stewart avoided placing his name on the lease as a means of concealing his whereabouts and drug-dealing activities. Accordingly, we find there was sufficient evidence from which the jury could reasonably infer that Stewart knew that the apartment where he lived and sold cocaine was public housing.

Respondent's Exhibit 6, pp. 10-14.

A federal court, in reviewing a sufficiency of the evidence claim, must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.

9

Virginia, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime."). The fact finder is given latitude "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319; see also McDaniel v. Brown, 558 U.S. 120, 132-133 (2010).

The evidence in this case is sufficient to support petitioner's convictions under the above standards. The Missouri Court of Appeals determined that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that petitioner knew that the apartment where he sold cocaine was public housing because evidence suggested that petitioner resided at the apartment and because the status of the development was well known. Respondent's Exhibit 6, pp. 10-14. Petitioner has failed to show that the Missouri Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or that it was "based on an unreasonable determination of the facts in light of the evidence presented" at trial. 28 U.S.C. § 2254(d)(1) and (2). Ground 2 will be denied.

## **GROUND 3**

In Ground 3, petitioner asserts a claim of ineffective assistance of direct appeal counsel in that counsel failed to allege on appeal that the venire panel was biased. Doc. No. 1, pp. 12-14. The Missouri Court of Appeals, Western District, denied Ground 3 as follows:

> Stewart contends that his appellate counsel was ineffective for failing to assert a contention on direct appeal that the trial court erred by overruling defense counsel's objection to the venire panel. Specifically, Stewart claims that his right to a fair trial was violated because the majority of the jury panel had a "predetermined opinion" regarding his case that substantially impaired their ability to be fair and impartial. He also maintains that a reasonably competent attorney would have raised

this claim and that there is a reasonable probability that his conviction would have been reversed on appeal. We disagree.

The record shows that during *voir dire*, the prosecutor asked the venire panel whether anyone disagreed with the proposition that "generally, [drug] sales occur between people that know each other, and as a stranger . . . it's unlikely that I could walk in and buy crack cocaine or any other drug?" Defense counsel objected to the question on the basis that it required expert testimony and "*should not be stated as such*." At that point, the court held a brief bench conference and determined that the prosecutor could ask the question. The prosecutor then clarified, "I think what I asked was . . . if a stranger knocked on a door to buy crack cocaine without any prior association with that person or location." Defense counsel then responded, "*That . . . sounds fine.*" Upon returning to open court, the prosecutor asked the following to the venire panel:

> I think what I asked is, is there anybody [who] believes that an individual could walk up to a door there or a location where controlled substances are being sold and just knock on the door and buy as if you were going to Wal-Mart, for example? Is there anybody here that believes that – that an individual could just walk up to a stranger in a strange place and buy illegal narcotics from there? If so, please raise your paddle. And I don't see anything.

During *voir dire* questioning by the defense, trial counsel asked the following:

> **Defense Counsel**: *Is there anybody here that does not feel they can listen to the evidence and know confidently right now they would be able to listen to only that evidence to make their decision and render a verdict today? I see there are no hands raised.*

A few minutes later, defense counsel asked the following:

> **Defense Counsel**: [The prosecutor] asked if anybody here believed that a stranger could walk up to a house and purchase – with the intent to purchase crack cocaine, and nobody here raised their hand. Is there anybody here that believes that . . . a drug transaction could take place, a stranger could walk up to a house with the intent of buying drugs, and do that and not know the person who was selling it? Is there anybody here who believes that could happen?
>
> **Venireperson No. 14**: I do, but depending on the different circumstances, depending on the different circumstances, depending on where they were, the vicinity. If we're talking in Missouri or California or places like that, you've got to go on different circumstances, because you don't know the whole thing.
>
> **Defense Counsel**: Okay.

11

> **Venireperson No. 14**: We're just dealing with this right here.
>
> **Defense Counsel**: That's correct.
>
> **Venireperson No. 14**: We're not dealing with out there.
>
> **Defense Counsel**: That's correct. So I really appreciate that, because that is absolutely true. We are dealing with a crime that occurred or is alleged to have occurred here in Saline County. And is there anybody that believes a stranger could walk up to a house and purchase crack cocaine here in Saline County? Yes?
>
> **Venireperson No. 19**: I believe it's possible, but not likely.
>
> **Defense Counsel**: Okay. Is there anybody else? Yes.
>
> **Venireperson No. 34**: I believe it probably could happen. I still have big city values. We've only been here for three years, and we came from Philadelphia.

Following *voir dire*, the court struck jurors Nos. 3, 4, 9, 10, 11, 25, 31, 34, 40, 41, and 47 for cause. The State exercised its preemptory strikes on jurors Nos. 1, 5, 6, 16, 19, and 27. Defense counsel exercised her preemptory strikes on jurors Nos. 8, 20, 21, 23, 28, and 29. The jury at trial was made up of jurors Nos. 2, 7, 12, 13, 14, 15, 17, 18, 22, 24, 26, and 30.

When the court asked if there were any other issues to discuss, defense counsel responded by stating:

> Your Honor, . . . although a little unusual, I would like to make the general objection that there were only two – all jurors but two that answered that they believed that in Saline County a stranger could purchase drugs from a stranger in Saline County at a house. To me, that seems like an opinion that has already been formed prior to listening to the facts. It's just a situation they don't think would occur. There were only two persons that stood up and at least admitted that, although unlikely, it would depend on the circumstances. And given the case, I feel that those jurors already have a predetermined opinion as to . . . that and should not serve on the jury.

For purposes of clarity, we note, as the State point out, that defense counsel misstated to the trial court that, "*all but two of the jurors answered that they believed . . . that a stranger could purchase drugs from a stranger . . . at a house.*" Stewart repeats this misstatement in his brief. In fact, with the exception of three persons, no one else on the venire panel even responded to the question. The three persons who did respond indicated that they thought it *was* possible for someone to buy drugs from a stranger. After both sides made their strikes for cause and preemptory strikes,

defense counsel told the court she wanted to make a "general objection." . . . . The trial court denied the objection.

Regarding the defense counsel's objection to the venire panel, the motion court made the following findings:

> Trial counsel made no motion to strike for cause based upon the jurors' perceived misperception. After strikes for cause were considered, the State and movant made their preemptive strikes. It was only then that trial counsel made a general objection to the entire panel, with two exceptions. The exceptions were not specifically referred to by name or number. Counsel said her objection was only "for the record." . . . . No mention of the objection was made until after the State made its preemptive challenges. Only then, having discerned the State's preferences, did counsel move to strike, in essence, the entire panel. Dismissal of the entire panel is a dire remedy. The Court finds that movant's ill-timed motion to strike the panel for cause, which would have necessitated a continuance of the trial, is without merit. Had movant seriously considered the import of the motion, a better record would have been made.

Finally, the motion court found that defense counsel's objections lacked merit because "the concept that a person could walk up to an unknown person or house and buy crack cocaine without some prior knowledge borders on ludicrous." The court stated that "to conclude therefrom that the entire panel is biased against movant, or that the panel so firmly holds a mistaken belief that they will not follow the instructions of the Court, is totally without merit." In denying his post-conviction motion, the court concluded that Stewart's claims failed to provide any grounds for relief and that appellate counsel was not ineffective.

The motion court's findings are presumed correct. Worthington v. State, 166 S.W.3d 566, 572 (Mo. banc 2005). Although Stewart now complains that appellate counsel was ineffective for failing to argue on direct appeal that his right to a fair trial was violated because the jury was biased against him, he presented no evidence at the post-conviction hearing to support this allegation. At the evidentiary hearing, Stewart's trial counsel testified that she had objected to the jury panel and included that claim in a motion for new trial. Stewart testified that he did not discuss the omission of this claim with his appellate counsel. Stewart did not call his appellate counsel as a witness at the hearing.

Missouri courts have held that when a movant claims ineffective assistance of counsel but fails to call the attorney as a witness at the evidentiary hearing, the movant fails to meet his burden of proving the allegations against his counsel. See, e.g., Taylor v. State, 126 S.W.3d 755, 758-59 (Mo. banc 2004). A movant's failure to call his attorney as a witness at the evidentiary hearing constitutes a failure to overcome the presumption that counsel made reasonably strategic decisions and provided effective assistance. Id.

13

Stewart failed to call his appellate counsel as a witness at the evidentiary hearing. Had Stewart called appellate counsel to testify at the evidentiary hearing, counsel could have explained his reasons for not raising the alleged claim of error on direct appeal. However, in view of the fact that Stewart failed to present the testimony of his appellate counsel, or any other sufficient evidence to demonstrate that counsel's actions amounted to ineffectiveness, he has failed to support a finding that his attorney's actions fell outside the wide range of professionally competent assistance. Thus, Stewart has failed to overcome the presumption that appellate counsel provided effective representation.

Stewart's argument also fails because he has not shown that appellate counsel failed to act reasonably in deciding not to present this issue on appeal in favor of stronger claims of error. Decisions by appellate counsel are presumed to have been made in exercise of reasonable professional judgment. Johnson v. State, 283 S.W.3d 279, 283 (Mo. App. 2009). There is no duty for appellate counsel to raise every possible claim alleged in a motion for new trial. Howell, 357 S.W.3d at 247. Nor is there a duty to present non-frivolous issues where counsel strategically decides to "winnow out" certain arguments in favor of others. Storey v. State, 175 S.w.3d 116, 148 (Mo banc 2005). "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Howell, 357 S.W.3d at 247 (quoting Smith v. Murray, 477 U.S. 527, 536 (1986)). In the absence of contrary evidence, we must presume that appellate counsel reviewed all the claims alleged in the motion for new trial and acted reasonably competent in determining which issues to present on appeal. See Cole v. State, 223 S.W.3d 927, 931 (Mo. App. 2007).

Stewart also fails to show that he would have prevailed on appeal had this claim been raised. Trial courts have wide discretion in determining the qualifications of potential jurors. State v. Thomas, 70 S.W.3d 496, 507 (Mo. App. 2002). The existence of bias or prejudice is a factual determination which turns largely on the credibility and demeanor of the challenged juror. State v. Landers, 969, S.W.2d 808, 811 (Mo. App. 1998). The trial court is in a better position to determine whether the jurors can fairly and impartially evaluate the evidence. Id.

. . . .

The motion court correctly determined that Stewart's claim would not have prevailed had it been raised on direct appeal. The mere fact that the majority of the jurors may have thought it unlikely that a person could knock on a stranger's door and demand crack cocaine does not translate into a preconceived opinion or bias that would have precluded them from being qualified to serve on the jury. There was no evidence to demonstrate that the jurors were unable to follow the trial court's instructions or consider the evidence fairly and impartially. Moreover, the record shows that the jury panel answered affirmatively when asked by *defense counsel* whether they could reach a verdict based solely on the evidence presented at trial.

We find nothing in the record to support the allegation that any perceived opinion by jurors hampered their ability to fairly and impartially consider the

14

> evidence. Consequently, even if appellate counsel had presented this claim on direct appeal, it would not have prevailed. Appellate counsel was not ineffective for failing to raise a non-meritorious claim. The motion court did not clearly err in denying Stewart's motion.

Respondent's Exhibit 11, pp. 3-10 (footnotes omitted).

A claim of ineffective assistance of appellate counsel is subject to the same two-part test set forth in Strickland v. Washington for claims of ineffective assistance of trial counsel. Harris v. Missouri, 960 F.2d 738, 739 (8th Cir.) cert. denied 506 U.S. 921 (1992) (citing Strickland v. Washington, 466 U.S. 668 (1984)). Consequently, in order to establish ineffective assistance of appellate counsel, a petitioner "must show that appellate counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense." Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). To satisfy the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

The Missouri Court of Appeals denied petitioner's claim of ineffective assistance of direct appeal counsel because, by not calling appellate counsel to testify, petitioner failed to overcome the presumption that appellate counsel provided effective representation and because a claim that the venire panel was bias would have been without merit. Respondent's Exhibit 11, pp. 3-10. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 3 will be denied.

### GROUNDS 4, 5, AND 6

In Grounds 4 and 6, petitioner asserts claims of ineffective assistance of trial counsel in that counsel failed to investigate the sufficiency of the search and arrest warrant and failed to file motions to quash the warrants and dismiss the complaint. Id. at 15, 20-23. In Ground 5, petitioner claims that trial counsel was ineffective for failing to object to "faulty and erroneous jury instructions" and that

15

appellate counsel was ineffective for failing to raise the issue on direct appeal as plain error. Id. at 18-19. Respondent contends that petitioner procedurally defaulted Grounds 4-6 by failing to assert them on post-conviction appeal. Doc. No. 9, pp. 2-4.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan, 54 F.3d at 1381. "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id.

Petitioner procedurally defaulted Grounds 4-6 by not asserting them on appeal from the denial of his post-conviction motion. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

Petitioner states that Grounds 4-6 were not raised on appeal from the denial of his post-conviction motion because "counsel neglected or inadvertently failed to brief the grounds to the Western District of Missouri, Court of Appeals." Doc. No. 1, p. 26. A claim of ineffective assistance of post-conviction appellate counsel does not provide cause excusing procedural default. Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012). Consequently, petitioner fails to establish cause and prejudice for the procedural default of Grounds 4-6.

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir.) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for

which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). For the foregoing reasons, Grounds 4-6 will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

  /s/ Beth Phillips
BETH PHILLIPS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: June 13, 2013 .